May it please the Court, my name is Rebecca Silbert. I'm appointed to represent Harold Sipai in this matter. I'd like to reserve two minutes, please. The case before this Court is actually very narrow. The issue is, can the Sentencing Commission limit a district court's jurisdiction to hear motions under Section 3582 through guideline policy statements? The commission can't do that. It's not consistent with the statute, with 3582. 3582 grants jurisdiction to district courts whenever a defendant is serving a term of imprisonment based on a sentencing range that has been lowered. It doesn't require more than that for jurisdiction. So to rely upon the Sentencing Commission's interpretation or addition or restriction to that is improper. It's also inconsistent with Hicks out of the circuit and Booker to interpret the commission's policy statements as binding and jurisdictional upon the district court. It's inconsistent with the delegation of powers to Congress. Congress sets jurisdiction on district courts, not the Sentencing Commission. For all of these reasons you don't really have to go that far, do you? I don't think so. Because in this case, the district judge actually did not apply the enhancement and based the sentence on a sentencing range that would have been in effect but for the career offender enhancement, correct? She absolutely did. So we don't have to go to that kind of broader question in this case, right? We don't. We don't. And the Court no doubt got the 28-J of the government in our 28 days. And there are obviously across the country numerous courts dealing with this issue. It's actually a very narrow issue that affects only a very narrow class of defendants. And like Mr. Sapai, many of these defendants, the Court departed to or otherwise applied the 2D1 range. So if you, at the very heart of this, this is a retroactive amendment, a retroactive law, the whole legal fiction of retroactivity is that you can go back in time. And that is even referred to in 1B1.10, that the Court is to go back and reapply the guidelines as applied the first time. If you go back in time in this situation, it certainly is likely a distinct possibility that the Court might have imposed a lower sentence. She said, I'm going to recalculate the 2D1 range. I want to give him a sentence at the high end of that range. She did that. Mr. Sapai's sentence is thus based on a sentencing range that has been lowered. And the question ends there. We don't have to reach the constitutional issues. We don't have to reach Hicks. We don't have to reach 1B1, because it's a very narrow issue. Didn't she – didn't Judge Chesney mention specifically that she was sentencing based on the career offender guideline? In the hearing on the motion? Yeah. Or her original sentence? An original sentence. I don't believe in the record – I could be wrong. I don't believe in the record she uses the word based on during the original sentence. I would have to look again at that. Even if she said that, though, it wouldn't necessarily mean – her comment at the original sentencing wouldn't necessarily exclude a finding that the actual ultimate sentence under the meaning of 3582 was based on a number of factors, including 2D1. And in fact, at the hearing on this motion, the motion for resentencing, she disagreed with my argument. But she disagreed with my argument not because she didn't base his sentence on 2D1.1. She, in fact, says – I believe the quote is, I based it on a number of factors. We don't disagree with that. She based it on 3553. She based it on his priors. And she based it on 2D1.1, among other things. And for that reason, she had jurisdiction to consider his motion. And her finding that the policy statement precluded her from exercising jurisdiction over the motion was therefore an error. So you wouldn't disagree that she had discretion to deny your motion on a substantive basis, saying I cut him the break that I thought was appropriate at the time and I'm not going to go any further? Of course. And that's clear from the language of 3582. 3582 sets out jurisdiction and then makes clear that a court in its discretion can do what it deems appropriate. Now, again, the court would not be bound by 1B1.10 in the exercise of its discretion. That brings us back to where we started. The sentencing range that she used was 120 to 150 months for level 26, which she arrived at by deducting the two for acceptance of responsibility, right? That's correct. Well, then she sentenced 144 months. That would be a pretty good indication, would it not, that when she was considering this range, that she took a higher, pretty much to the higher end of that range? That's right. And that's expressly what she said during the sentencing. I'm going to recalculate the range. It's 120 to 150. I want to give him a sentence at the high end. And she does, 144. I believe she uses the term round number, 144 months being 12 years. Now, his range is, I believe, 100 to 125, and the court is absolutely correct. We could go back and she could say, I've reviewed 3553 again. I still think 144 is appropriate. Or she could say, I've reviewed everything, including the new 2D1 range and the difference. And now I think it should be lower. But she has jurisdiction to make that determination. If she had sentenced him as a career offender and said at the time of the original sentence, sorry, he's a career offender, he gets, I don't remember, it was really high guidelines, two, you know. 62, I believe. So, you know, I'm going to sentence him at the low end of the career offender guidelines, but he gets 260 months or whatever it was. Then do you believe that you could be here arguing this point? Well, the Ninth hasn't ruled on this issue, and we do concede that every other circuit that has ruled on it has found that those defendants would not be eligible. Right. I think I will reserve my remaining time for rebuttal if needed. Thank you. May it please the Court, Tracy Brown on behalf of the United States. Your Honors, this appeal boils down to the meaning of based on a sentencing range that has subsequently been lowered under 18 U.S.C. 3582C2. That phrase, based on a sentencing range, means the correctly calculated guidelines range before any 3553 variance. This is consistent with the approach laid out by the Supreme Court in Gaul and the policy statements under 1B1.10. It is also consistent with two recent circuit court cases that were cited in the Jay letter, that's the Third Circuit's decision in Navreed and the First Circuit's decision in Carabello. In both cases, the district courts, I'm sorry, the circuit courts held that there was no jurisdiction under 3582 where the district court, where the district court found that the person qualified as a career offender, but nonetheless imposed a well below guideline sentence on the basis of the 3553 factors. But wasn't that factor, I mean, wasn't that sentence, in fact, based on a, on the sentencing range set forth in the drug tables under 2D1.1? No, it wasn't, Your Honor. And you can tell that if you look carefully at the excerpts of record under, at pages 46 to 47, where the judge actually imposed sentence. She says, and this is right after she mentions, as a reference point, that the judge imposed sentence. And she says, well, it does appear to the court, having considered the guideline calculations and the factors in 18 U.S.C. Section 3553A. And she goes on, and she says, a substantial sentence is warranted here, having taken into consideration the relatively small quantity of drugs, the defendant's relatively low IQ score, and his general criminal history before this.    Nowhere where she actually imposes sentence does she mention the 2D1.1 guideline range. Where's the guideline range? It was, she was, it was used as a reference point, and as, as set forth in the Cardoza case, which is also cited by the government in its Rule 28J letter. There, the court found that the career offender guideline range applied, just as this court did. And you know that from the statement of reasons at page, ER page 33.     into consideration the relatively small quantity of drugs, the defendant's generally Now, if you look at this line, cardiography, and you look at this thread, she specifically refers to the guideline.  Yes, but then you have, indeed, it says. It does appear to the court, having considered the guideline calculations and the factors in 18 U.S. There, having considered. Yes, having considered the guideline calculations. Well, isn't that the key to whether you have jurisdiction or not? Well, but if you look at the statement of reasons, which by definition is, of course, the basis, sets forth the basis for the courts imposition of sentence. The guideline calculation at page 33 is the career offender range of 210 to 262 months. Nowhere does she check that under 4A1.3, that the criminal history over, I'm sorry, that that category overstates the defendant's criminal history. And that distinguishes this case from cases like Poindexter and Niigata. But, she specifically used that range when she did it. She got down to 26, level 26. That is what was involved in the sentencing guideline. She used that range as a reference point. And as I was saying, the district court in the Cardoso case did the exact same thing. They, the court imposed a sentence at the high end of the 2D1.1 guideline range. And it said, although I, quote, unquote, used as a benchmark the otherwise applicable guideline range, there was no jurisdiction because, quote, it is the properly calculated guideline range rather than the ultimate sentence, which is the proper focus for determining eligibility under 3582. Sotomayor saying that because he was a career offender, that's the end of the story. So, I mean, and the, your appellant counsel has acknowledged that every circuit court that's considered that has found that to be true. So you want us to basically ignore what happened in this specific case, which was that there was a departure from the career offender guidelines, and that this sentence, this particular sentence was based on the crack guidelines. I don't know how there's any other way to interpret it. I mean, you look at the crack guidelines, that's what they are. Level 28, two levels offer acceptance of responsibility. That's where her sentence falls. I don't think that's what the government is saying, Your Honor. The government, although the issue is not squarely raised in this case, I think that the government would be in a different position if, like the court in Poindexter, for example, the court had said, well, technically you qualify as a career offender, but I expressly reject that calculation under 4A1.3, and I am expressly, therefore, going to use the 2D1.1 guideline range. In the statement of reasons, nowhere, even though she lays out the reasons for the below guideline sentence, nowhere does she mention the crack guideline range. She says, where it says on page 35, Explain the facts justifying a sentence outside the advisory guideline system. Defendant possessed relatively small quantity of controlled substance and had IQ score substantially below normal. Prior offenses likewise involved small quantities. Nowhere does she mention the otherwise applicable guideline range under 2D1.1. So under the defendant's theory, consider this. If there were two defendants who were career offenders sentenced by different district court judges, and in both cases, as here, the district courts found that the career offender designation applied and did not overstate the criminal history category. But in one case, the district judge in the privacy of his chambers looked up the otherwise applicable guideline range and used that as a reference point. And in the other case, the district judge did the exact same thing, but actually mentioned having done so at the sentencing hearing. Under the defense's theory, the mere mention of the 2D1.1 guideline range would open the doors to jurisdiction. And in the, the, the. Kagan. That's pretty clear, too, because that's what happened in Kleindexter, isn't it? No, it isn't, Your Honor, because in that case, unlike the hypotheticals I am setting forth here, the district judge expressly rejected the career offender range under 4A1.3 and said, that overstates. You're really basing your argument here on the use of magic words. I mean, even though it's, it couldn't be clearer in this case that, that the, the sentence that Mr. Suppai received was based on the, the crack guidelines. I mean, you look at 2D1, you look at his sentence, and the judge expressly says, having considered the guideline range. So, I mean, what additional words do you want here that it has to say, based on, or I expressly did that, and that would make it okay? I think the words that are missing here are, I am rejecting the career offender guideline range and expressly adopting the 2D1.1 guideline range. No, that's what she clearly did. She, in the government's view, she used 2D1.1 as a reference for a 3553 analysis. Just like the court in Cardosa, just like the district, I'm sorry, just like the court in Cardosa, just like the district court in the Korber case, which came out recently in the District of Kansas, and just like the court in the Jackson case, which is also from the Eastern District of Pennsylvania, and which is also set forth in the government's Rule 28J letter. And finally, Your Honors, in recognition of the critical importance of finality in judgments, 3582 makes clear that a court may not modify a term of imprisonment once it has been imposed, except in very limited, specifically delineated circumstances. In the government's view, the defendant's reading of the statute would broaden the term based on a sentencing range to include any guideline that was ever mentioned along the way as a benchmark or reference point by a sentencing judge, regardless of whether that guideline was actually determined, the final applicable guideline calculation. Is there any difference to this defendant whether he's sentenced based on the guidelines that we've discussed now? Is there anything that affects his supervised release or his future life? I don't believe so, Your Honor. I'm not – if the question is whether the designation has some additional collateral effect, I don't believe so, Your Honor. If the Court has no further questions, I'm happy to submit. One question. The key is whether it's based on, right? Correct. Now, how could you say it was based on the career criminal one? Because the Statement of Reasons sets forth that the guideline calculation that the Court accepted and used was the 4B1.1 career offender guideline calculation, and that's an ER33. Definitely did not use it because the district court had gone ahead and said, all right, I'm using, in effect, the guideline, level 28. I think, again, Your Honor, I would point to the Statement of Reasons, which nowhere mentions the 2D1.1 guideline range. I think the district judge mentioned that in passing in order to get a benchmark, essentially, for her 3553 analysis. Yes, you say he did mention it in passing. I think you even referred to me. I'm sorry? I think you even read that to me. She said the guideline calculation, which I interpret as the career offender guideline calculation, which is what the district court adopted in the Statement of Reasons. Adopted? Used, adopted, and set forth as the appropriate guideline calculation. But certainly based it on the guidelines. I think you got to level 28. Again, Your Honor, I would say that when setting forth her reasons, her basis for the sentence, it's 4B1.1 and 3553. And she used it as a benchmark, but nothing more. Okay. Thank you. Thank you, Your Honors. Rebecca Silbert for Mr. Sapai again. Could you speak up a little?  Two quick responses. On the Statement of Reasons, 3553C, which sets out the court's imposition of sentence in the Statement of Reasons, makes clear that the statements that the court makes in open court are equally significant as what's listed. What's stated in open court is as significant as what's listed on the Statement of Reasons. And in fact, But what if what's stated in open court is ambiguous? Shouldn't we go by the Statement of Reasons, which is written and signed by the judge? Well, first, I don't think that it's ambiguous in this case. So I don't think that it's ambiguous. Can't be that possibility. If it were ambiguous, I think the Statement of Reasons is an element in the court's interpretation of what happened. But as this Court, no doubt, has reviewed many times in the number of times that cases are reviewed for reasonableness post Booker, this Court in Carty and virtually every circuit has said repeatedly, when reviewing for reasonableness, we will look at the whole record to determine reasonableness. It's no different here. The reasons for the sentence imposed are in open court and the Statement of Reasons. The Statement of Reasons holds no greater or special significance over what is said in open court. The second point is the government's assertion that the mere mention of 2D1 would open the floodgates is untrue both factually, pretty much all of the cases in the Northern District out of 85 cases. This comes up in five. Kennedy. If we adopt your position, there will be a circuit split between the ninth on the one side and the first and the third on the other, correct? Well, the first hasn't ruled. There's a District of Massachusetts case that the government is talking about. Then just leave the Third Circuit. Well, then Third Circuit's opinion is actually unpublished. So and Stratton, a district court in the Eastern District that we cited, actually postdates that Third Circuit case. So this Court's rule would be consistent with the Second Circuit in McGee, the eleventh in Moore, and even the seventh in Foreman, which is cited by the government. Foreman found that there was no jurisdiction, but Foreman premised that by finding 1B1.10 binding and jurisdictional in that circuit, which isn't the case here. So I don't think it's setting up a circuit split. Thank you very much. Thank you both for a very good argument. United States versus supply is now submitted.
judges: Hug, Bea, Edmunds